UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――
LORRI A. GOVE,
                       Plaintiff,

           -v-

ANDREW M. SAUL, Commissioner of
Social Security,
                      Defendant.
―――――――――――――――――――――――――――――――

19-CV-6839 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Pursuant to 42 U.S.C. § 405(g), Lorri Gove has challenged the final decision of the Commissioner of Social Security denying her application for disability insurance benefits, arguing that it was not supported by substantial evidence and contained legal error. Both Gove and the Commissioner have filed cross-motions for judgment on the pleadings. For the reasons that follow, the Commissioner's motion is granted.

**I.    Background**

    Plaintiff Lorri Gove is 44 years old. (Admin. Transcript ("Tr.") at 162.) She has a high school education and completed one year of college. (Tr. at 181.) She last worked as a caregiver, from November 2015 until February 2016. (*Id.*) Before that, she worked as a residential director in a behavioral health clinic from November 2009 to June 2015. (Tr. at 243.)

    In May 2016, Gove filed an application for disability benefits, alleging that she became disabled on June 16, 2015. (Tr. at 10.) As part of her application, she indicated that she was unable to work due to anxiety and depression. (Tr. at 180.) The claim was denied on August 12, 2016, after which Gove filed a written request for a hearing. (Tr. at 10.) After a hearing in Goshen, New York, in May 2018, Administrative Law Judge ("ALJ") Sharda Singh found that Gove was not disabled. (*See* Tr. 10-20.) Judge Singh concluded that, "considering the

1

claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 20.)

Gove then filed a request for review of the decision, arguing that Judge Singh's conclusion was "not supported by the evidence in the record." (Tr. at 157.) The request noted that Gove "is limited in working at or near other people," "has difficulties with focus and attention," and responds poorly to "changes in the work setting." (Tr. at 157.) On May 23, 2019, the Appeals Council denied her request for review. (Tr. at 1.) Gove then filed an appeal in this Court, arguing that her disability determination was "not supported by substantial evidence and applie[d] an erroneous standard of law." (*See* Complaint ¶ 7.)

**II.   Legal Standard**

Under the Social Security Act, and as relevant here, a disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To establish a disability under the Act, a claimant must demonstrate an impairment "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In evaluating disability claims, the Commissioner considers (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a "severe impairment" limiting her ability to work; (3) whether the claimant's impairment is listed in the regulations; (4) whether the claimant has the residential functional capacity to perform her past work; and (5) if the claimant does not have that capacity, whether there is other work she could

perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). At the first four steps, the claimant bears the burden of proof; at the final step, the Commissioner must prove "that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Id.* (internal quotation marks and citation omitted).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A "mere scintilla" is not enough. *Id.* (quoting *Richardson*, 402 U.S. at 401).

Still, "substantial evidence" is "a very deferential standard of review — even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted). Instead, it must accept an ALJ's findings of fact unless "a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (emphasis, internal quotation marks, and citation omitted).

## III. Discussion

In evaluating Gove's disability claim, the ALJ undertook the required five-part analysis, finding that she had not engaged in substantial gainful activity since the alleged onset of her disability; that she suffered from "major depressive disorder and panic disorder"; that her impairments were not listed in the regulations; and that she was "unable to perform any past relevant work." (Tr. at 12, 13, 19.) At the fifth step, the ALJ ultimately concluded that Gove

3

was not disabled because, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 19.)

Gove alleges that this conclusion is contrary to "the opinions of every medical source who has seen and treated this plaintiff." (*See* Dkt. No. 13 at 11.) The Commissioner disagrees, contending that the ALJ's findings are supported by substantial evidence. (*See* Dkt. No. 16 at 16-24.) Having conducted an independent review of the evidence, the Court sides with the Commissioner.

### A.     Residual Functional Capacity

First, substantial evidence supports the ALJ's assessment of Gove's residual functional capacity. Residual functional capacity is "the most [a claimant] can still do" despite her limitations. 20 C.F.R. § 416.945(a)(1). In Gove's case, the ALJ found that she had the residual functional capacity to "perform a full range of work at all exertional levels," so long as the work was limited to "understanding, remembering, and carrying out simple, routine, and repetitive tasks with an SVP of 2 or below"[1] and required no more than "frequent interactions with coworkers and the public." (Tr. at 14.) The ALJ's conclusion was supported by a number of sources, including the assessments of psychologists Stephen Hennessey and Leslie Helprin, as well as many other "mental status examination findings of record." (Dkt. No. 16 at 17.)

Dr. Hennessey, a state-agency psychologist who reviewed the medical evidence on record, found that, despite her "severe psychiatric impairment," Gove remained able to

---

[1] SVP stands for "Specific Vocational Preparation," or "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702. An SVP of 2 is "[a]nything beyond short demonstration up to and including 1 month." *Id.*

4

"understand and remember simple and detailed instructions and work procedures without substantial limitation," "complete routine tasks at a reasonable pace," and "respond to supervisors and coworkers appropriately." (Tr. at 72.) Dr. Helprin, who examined Gove on April 3, 2018, noted that she was cooperative, coherent, and well groomed. (Tr. at 416.) Although she found that Gove's memory and concentration were "mildly impaired due to anxiety," Dr. Helprin concluded that Gove would nevertheless be able to understand and carry out instructions, as well as interact appropriately with supervisors, co-workers, and the public. (Tr. at 417, 420-21.)

As the Commissioner points out in his briefing, the ALJ's conclusion also finds support in other evidence in the record. (*See* Dkt. No. 16 at 18.) In 2015, for example, Taniesha Lewis, a licensed clinical social worker, found Gove's speech "clear"; her thought process "logical"; and her appearance, cognition, and judgment "within normal limits." (Tr. at 370-71.) Nnamdi Maduekwe, a psychiatrist who evaluated Gove in January 2016, reported that although Gove was "low spirited" and suffered from insomnia, she was well groomed, stable, goal directed, alert, and fully oriented. (Tr. at 282.) In August 2016, meanwhile, a clinician at the Orange County Department of Mental Health found that Gove had a "flattened" affect and "moderately impaired" concentration, but that she had no memory impairment and adequate social judgment. (Tr. at 410-11.) Taken together, and especially in light of the deferential standard of review, such evidence is enough to support the ALJ's determination that, in spite of her anxiety and depression, Gove still had the residual functional capacity to perform simple tasks and interact with coworkers and the public.

Gove nonetheless takes issue with the ALJ's determination for two reasons. First, although she does not make this argument explicitly, Gove's briefing suggests that the ALJ's

5

findings were inconsistent with Gove's own testimony regarding her symptoms. (*See* Dkt. No. 13 at 6.) It is true that parts of Gove's testimony — that "she could not work due to panic disorder and bipolar disorder," that "she was unable to focus on anything and could not stay present in the moment," and that "her memory was not good [and] she could not make decisions clearly" — seem at odds with the ALJ's finding of residual functional capacity. (Tr. at 15.) But the ALJ need not take a claimant's self-reported symptoms at face value. Instead, where "subjective symptoms … are reported, the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence." *Lugo v. Apfel*, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998) (internal quotation marks and citation omitted). If the ALJ rejects subjective testimony, she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Id.* (internal quotation marks and citation omitted).

      That is exactly what the ALJ did here. She stated, explicitly, that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 15.) And she supported that conclusion by citing specific places in the record where evidence appeared to contradict Gove's testimony, including evidence that Gove had "a wide range of daily activities, including volunteering with her significant other, doing household chores, and socializing"; that she had never been hospitalized with a psychiatric illness; that she was on a conservative treatment plan; and that medical evaluations found her to have only mild impairments in attention and concentration. (Tr. at 16-17.) Thus, the ALJ was well within her discretion in finding Gove's testimony less persuasive than other evidence at hand.

Gove's second objection concerns how the ALJ chose to weigh certain evidence in the record. Gove argues, in particular, that the ALJ should have placed more weight on the opinions of three medical professionals: Steven Phillips, a licensed mental health counselor who was Gove's therapist for a brief time in 2016; Dr. Quazi Al-Tariq, a psychiatrist who treated Gove for four months in 2016; and Dr. Alison Murphy, a clinical psychologist who examined Gove on June 30, 2016.[2] (Dkt. No. 13 at 7-9; Dkt. No. 16 at 4-7.) In general, the weight an ALJ should place on various medical opinions depends on the nature and qualifications of the source. A claimant's treating physician generally merits the most deference. A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "[I]f the ALJ does not give controlling weight to a treating source's opinion, the ALJ must provide good reasons for the weight given to that opinion." *Pappas v. Saul*, 414 F. Supp. 3d 657, 675 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). Next, the ALJ typically gives more weight to the opinion of a source who has examined the claimant than to one who has not. 20 C.F.R. § 404.1527(c)(1). The opinions of examining physicians are not controlling, however, "if they are contradicted by substantial evidence, be that conflicting medical evidence or other evidence in the record." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). Finally, an ALJ is not required to give any weight to the

---

[2] Gove also argues that the ALJ should have placed less weight on the opinions of Dr. Hennessey, alleging that he is not an "acceptable medical source." (Dkt. No. 13 at 7-8.) But this argument runs afoul of Social Security regulations, which state that ALJs "must consider" evidence from state-agency psychological consultants, as they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). In addition, Dr. Hennessey has been a licensed psychologist since 1997 (*see* Dkt. No. 16 at 11 n.3), qualifying him as an "acceptable medical source" under the applicable regulations. 20 C.F.R. § 404.1502(a)(2).

opinions of those who do not qualify as "acceptable medical sources" under the applicable regulations.  *See* 20 C.F.R. § 404.1502(a); *see also Puckett v. Berryhill*, No. 17-CV-5392, 2018 WL 6625095, at *14 (S.D.N.Y. July 13, 2018) (holding that the ALJ was not required to assign any weight to the opinion of a nurse practitioner because nurse practitioners were not, at the time, "listed as an acceptable medical source").

As a treating physician, Dr. Al-Tariq's opinions would ordinarily merit the most deference.  But a treating physician's opinions are not controlling where they are contradicted "by other substantial evidence in the record."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Accordingly, the ALJ properly afforded Dr. Al-Tariq's opinions partial weight, crediting the opinions that matched other evidence in the record — for example, that Gove "was not significantly limited in ability to carry out short and simple instructions," "sustain an ordinary routine without special supervision," and "interact appropriately with the public" — while dismissing opinions that contradicted them.  (Tr. at 17-18.)  The ALJ, for example, did not credit Dr. Al-Tariq's opinion that Gove could not complete "a normal workweek without interruption from psychologically based symptoms" because it was inconsistent with Gove's reported daily activities, as well as with the doctor's own finding that Gove could sustain an ordinary routine without supervision.  (Tr. at 18.)  The ALJ thus provided "good reasons" for giving that opinion only partial weight.  *Pappas*, 414 F. Supp. 3d at 675.

Dr. Murphy, meanwhile, qualifies as an examining physician.  In her opinion, Gove had a "marked limitation in maintaining attention and concentration."  (Tr. at 18.; *see also* Tr. at 289.) If the ALJ had given this opinion controlling weight, she might have had to revise her assessment of Gove's residual functional capacity, as an inability to pay attention or concentrate would make it difficult for Gove to carry out even simple and repetitive tasks.  But, as the ALJ

8

pointed out, Dr. Murphy's opinion was not "fully consistent with the medical evidence of record," which suggested that Gove's attention and concentration "were only mildly impaired." (Tr. at 18.)  Given that Dr. Murphy's opinion was "contradicted by … conflicting medical evidence," the ALJ was justified in giving the doctor's opinions little weight.  *Krull*, 669 F. App'x at 32.

Finally, the ALJ was not required to give any weight to the opinions of Steven Phillips, a licensed mental health counselor who does not qualify as an "acceptable medical source" under Social Security regulations.  *See* 20 C.F.R. § 404.1502(a); *see also Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317, 2020 WL 3035850, at *3 (W.D.N.Y. Jun. 5, 2020) (noting that licensed mental health counselors are "non-acceptable medical sources").  Even so, the ALJ provided additional reasons for discounting his opinions, including that Phillips "had only had three therapy appointments with the claimant prior to completing [his] opinion form," that the opinions were vague and unspecific, and that they were contradicted by more developed evidence in the record. (Tr. at 17.)

Gove's arguments are thus unavailing. The ALJ's finding of residual functional capacity was supported by substantial evidence, and the Court declines to re-weigh the evidence to arrive at a different conclusion.  *See Krull*, 669 F. App'x at 32 ("[Plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").

### B.     Jobs in the National Economy

The Court turns to whether substantial evidence also supports the ALJ's conclusion that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Tr. at 19.)  The ALJ reached this conclusion by asking a vocational expert whether jobs exist in the national economy "for an individual with the claimant's age, education, work

9

experience, and residual functional capacity." (Tr. at 19-20.) The vocational expert replied that such an individual would be able to serve as a hospital food-service worker, hospital cleaner, or automobile detailer — all of which have an SVP of 2 and exist in substantial numbers (according to the vocational expert, there are approximately 70,000 hospital food-service workers, 160,000 hospital cleaners, and 60,000 automobile detailers nationally). (Tr. at 58.) As a threshold matter, the ALJ's reliance on the vocational expert's testimony was proper, as the ALJ may use "the services of a vocational expert or other specialist" to determine whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e).

Gove objects that she could not serve as a hospital food-service worker because she cannot cook and would not be able to interact with patients. (Dkt. No. 13 at 10.) Her first claim is inconsistent with the evidence, as Gove told Dr. Helprin that she is able to "cook and prepare foods" (Tr. at 417), and the job in question would require preparing only simple food items, "such as sandwiches, salads, soups, and beverages," *Dictionary of Occupational Titles* 319.677-014, 1991 WL 672771. The second claim, meanwhile, is inconsistent with the substantial evidence the ALJ relied on to determine Gove's residual functional capacity — in particular, evidence that Gove would be able to interact appropriately with coworkers, supervisors, and the public. (*See, e.g.*, Tr. at 72, 421.) In any case, even if Gove could not work in hospital food service, there would still be two other jobs that she could do. *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that [the plaintiff] can perform.").

In addition to objecting to one job in particular, Gove also argues that the hypothetical question the ALJ asked the vocational expert — whether there were any jobs in the national

10

economy for someone with Gove's age, education, work experience, and residual functional capacity — "did not conform to the capabilities of [the] plaintiff" because she "is not capable of working at any job 8 hours a day, 5 days a week on a sustained and continuing basis." (Dkt. No. 13 at 11.)  But the Court has already determined that the ALJ's determination to the contrary was supported by substantial evidence.  "Because we find no error in the ALJ's [residual functional capacity] assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment."  *Salmini v. Comm'r of Soc. Sec*, 371 F. App'x 109, 114 (2d Cir. 2010).

The vocational expert's testimony thus provided substantial evidence to support the ALJ's conclusion that Gove "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. at 20.)  That conclusion, in turn, provided a valid legal basis for denying Gove's application for disability benefits.  *See* 20 C.F.R. § 416.960(c)(2) ("In order to support a finding that you are not disabled … we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.").

### IV.  Conclusion

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings is GRANTED and Plaintiff's motion for judgment on the pleadings is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 15 and to close this case.

SO ORDERED.

Dated: November 16, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge